

# Helen F. Dalton and Associates, P.C.
## Attorneys at Law

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
T. 718.263.9591 ◆ F. 718.263.9598

July 28, 2020

<u>Via ECF</u>
The Honorable Magistrate Judge Leda D. Wettre
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re: **<u>Tapia v. Glaze Donuts Corporation, et al.</u>**
    **2:18-cv-08517 (LDW)**

Dear Judge Wettre:

Our office represents Plaintiff Efrain Tapia ("Tapia") and Opt-in Plaintiff Victoria Perez-Flores ("Flores") (collectively, "Plaintiffs") in the above-captioned action against Glaze Donuts Corporation, Glaze Artisan Donuts LLC, Glaze West Caldwell LLC, and Jules Hazou (collectively, "Defendants") and we submit this motion on behalf of both parties to request the Court's approval of the settlement agreement ("Settlement Agreement"), between the parties. The Settlement Agreement attached hereto as Exhibit 1 memorializes the terms discussed between the parties at the January 15, 2020 Settlement Conference and the parties' continued negotiations thereafter.

**<u>Settlement Terms</u>**

The parties reached a settlement to resolve all claims asserted in this matter for $20,000.00, including attorneys' fees (which are addressed below) in fourteen monthly installments. The Settlement Agreement provides Defendants the right to pre-pay any portion of the payment due under this Agreement. In the event that Defendants complete a total payment of $18,000.00 within one-hundred-eighty (180) days of the Court's approval of the Agreement, Defendants will be exempt from paying the remaining Two Thousand Dollars ($2,000.00)

**<u>Plaintiff's Position</u>**

Tapia alleged that he was employed by the Defendants from in or around October 2014 until in or around June 2016 and from in or around June 2017 until in or around November 2017. Tapia alleged that he worked approximately sixty (60) to seventy (70) hours per week during his employment. However, despite working in excess of forty (40) hours per week, Tapia alleged that

Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NJWHL.

Tapia alleged that he was paid a flat weekly salary, which did not compensate him at time-and-a-half his regular rate for hours worked in excess of forty hours per week. Tapia alleged that he was not an exempt employee under the FLSA or NJWHL and, as such, Defendants were required to pay Plaintiff a regular hourly rate above the applicable minimum wage for his first forty hours and a rate not less than time-and-a-half his regular hourly rate for his overtime hours.

Flores alleged that she was employed by Defendants from in or around June 2015 until in or around June 2016. Flores alleged that she regularly approximately sixty-eight (68) hours per week during his employment. However, despite working in excess of forty (40) hours per week, Defendants did not pay Flores time and a half (1.5) for hours worked over forty (40). Flores alleged that she was paid $10.00 per hour for all her hours worked, even in excess of forty (40) hours per week.

In total, Plaintiffs alleged that they were owed approximately $68,000.00 in unpaid overtime wages.

Although Plaintiffs were confident that they could succeed on all of their claims at trial, their preference was a guaranteed payment through a court-approved settlement agreement. In accepting the Defendants' offer, Plaintiffs took into account the defenses raised by Defendants below, Defendants' financial situation and the ability to collect on a larger judgment should the matter have proceeded to trial (based on documentation provided by Defendants and carefully reviewed by counsel), and the timing of payments beginning in the near future as opposed to the uncertainty of a trial at a much later date.

**Defendants' Position**

Defendants contend that Plaintiff Efrain Tapia only worked overtime in the donut shop a few hours before holidays for which he was paid a bonus which was more than his time and a half hourly rate, and that his wife, opt-in Plaintiff Victoria Perez-Flores, never worked overtime.

**The Settlement Agreement is a Fair and Reasonable Resolution of a Bona Fide Dispute over FLSA Provisions**

### a. There are bona fide disputes over legal and factual issues

As elucidated above, the parties had disputes over both the legal and factual issues concerning this matter. Defendants disputed nearly every one of Plaintiffs' allegations, including Plaintiffs' dates of employment, Plaintiffs' rates of pay, and the number of hours worked by Plaintiffs each week. Furthermore, there were disputes over legal issues, as Defendants intended to move for summary judgment on the issue as to whether this Court had subject matter jurisdiction over the claims asserted by Plaintiffs. The only way to have resolved these outstanding disputes would have been through costly motion practice followed by extensive trial preparation and a trial lasting multiple days.

The parties maintained their positions despite their disagreements on the legal and factual issues but sought resolution through a carefully negotiated settlement rather than continue to incur legal fees in motion practice and pre-trial preparation for the next year.

### b.  The terms of the settlement are fair and reasonable

Although Plaintiffs were confident that they could recover the full extent of their alleged unpaid wages at the time of trial, Plaintiffs recognized the risks of first being successful at trial and being able to collect on a judgment should they have been successful at trial.

Defendants vehemently disputed Plaintiffs' allegations and maintain that they were properly compensated for all hours worked during their employment.

The settlement amount of $20,000.00 reflects a compromise between the parties over their dispute as to whether Plaintiffs were entitled to any recovery and exactly how much they could have recovered if successful at trial. However, more importantly, the settlement amount takes into account Plaintiffs' growing concerns of whether they could recover on a much larger judgment if they had prevailed at trial. Defendants disclosed an abundance of financial records which were carefully reviewed by Plaintiffs' counsel. Plaintiffs were concerned that – based on these records – that Plaintiffs might not be able to collect on a larger judgment and that Defendants' corporate entities could be shut down, discontinued or in bankruptcy by the time of trial. These concerns were only exacerbated in recent months due to the effects of the Covid-19 pandemic and its detrimental effects on small businesses.

As such, although Plaintiffs are not recovering the full amount of their alleged unpaid wages, it should be noted that Defendants strongly deny any liability and Plaintiffs were concerned that, absent a court-approved settlement, they may not have recovered anything even if they had prevailed at trial at a much later date in the future.

### c.  The settlement does not frustrate the implementation of the FLSA and is consistent with public policy favoring settlement

The Settlement Agreement does not contain any problematic terms that would frustrate the purposes of the FLSA. There is no confidentiality clause or gag order that would compel Plaintiffs' silence as to the settlement terms. Moreover, the release is carefully tailored to limit the waiver to claims which were alleged in the Complaint, specifically including FLSA, NJWHL, and NJWPL, and their associated regulations concerning unpaid wages. Plaintiffs are not releasing any unrelated or unknown claims and no unfair benefit is being conferred on the employer by Plaintiffs' acceptance of the Settlement Agreement. As such, the terms of the Agreement are fair and consistent with public policy favoring settlement.

Lastly, there is no possibility of fraud, collusion or overreach by the employer. Both parties were represented by experienced, competent counsel and aggressively litigated this action. Although the parties disagreed on many issues, they maintained a professional relationship throughout the litigation. The agreement was negotiated over a two-year period beginning with an in-person settlement negotiation by the parties followed by a length settlement conference before

the Court and continued arms-length negotiations over the last six months before achieving an agreement that both parties believe represents a fair compromise of the disputed facts and issues.

**Plaintiff's Recovery and Requested Attorneys' Fees**

The parties agreed to settle all claims asserted in this matter for $20,000.00, unless Defendants pre-pay $18,000.00 within 180 days of Court approval of the Settlement Agreement.

Plaintiffs' counsel respectfully requests an award of attorneys' fees equal to one-third of the settlement fund after expenses have been deducted.

If Defendants pay the full $20,000.00 settlement amount, Plaintiffs will recover $12,497.00 after attorneys' fees and expenses pursuant to the Agreement and in accordance with their retainer agreements with Plaintiff's counsel.

Additionally, Plaintiff's counsel respectfully requests reimbursement of $1,255.00, for identifiable expenses, which include the District of New Jersey filing fee ($400.00) and the costs of personally serving Defendants through their process server, Anke Judicial Services, Inc. ($855.00).

Therefore, the total amount to be paid to Plaintiff's counsel, including reimbursement of expenses, is $7,503.00.

**Settlement Amount:** $20,000.00
**Attorneys' Expenses:** $1,255.00
**Settlement less Expenses:** $18,745.00
**Requested Attorneys' Fees:** $6,248.00 ($18,745.00 / 3)
**Total payable to Attorneys:** $7,503.00 ($6,248.00 + $1,255.00)
**Total payable to Plaintiffs:** $12,497.00

Plaintiffs' counsel and their clients have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Third Circuit and fall within the range of reasonable allocations in the context of awards granted in other, similar cases. *See Bredbenner v. Liberty Travel*, 2011 U.S. Dist. LEXIS 38663 at *52. The attorneys' fees request of one-third of the settlement fund also comports with privately negotiated contingent fees negotiated on the open market. *Id.* at *60.

Here, Plaintiff's counsel is seeking attorneys' fees in the amount of one-third of the settlement total, pursuant to the retainer agreement entered into with the client. Since one-third is the standard amount allowed to attorneys in FLSA cases, and the Plaintiff entered into a contract for this amount with his counsel, this amount is fair and reasonable.

**Closing**

In closing, the parties respectfully submit that the terms of the Settlement Agreement are fair and reasonable, including the request for Plaintiffs' attorneys' fees, and therefore request that the Court approve or so order the Agreement.

Respectfully submitted,

*Attorneys for Plaintiff*